

**SIGNED this 10 day of October, 2007.**

_____
R. Thomas Stinnett
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:  

MARIA ESPERANZA SILVEY,

    Debtor;

JERROLD D. FARINASH, Trustee,

    Plaintiff,

v.

DARREL CROW SILVEY, and
SILVEY SHEET METAL COMPANY,

    Defendants.

Case No. 06-11860
CHAPTER 7

Adv. Pro. No. 06-1147

Appearances:    Jerrold D. Farinash and Jason D. Demastus, Kennedy, Koontz and Farinash, Chattanooga, Tennessee, for the Plaintiff

                  Thomas E. Ray, Samples, Jennings, Ray & Clem, Chattanooga, Tennessee, for the Defendants

The Honorable R. Thomas Stinnett
United States Bankruptcy Judge

## **MEMORANDUM**

The trustee in bankruptcy brought this suit to avoid a transfer from the debtor, Mrs. Silvey, to her husband, Mr. Silvey. The other defendant is Mr. Silvey's company, Silvey Sheet Metal; it was involved in subsequent transactions with regard to the transferred property. The trustee and the defendants have filed motions for partial summary judgment and have agreed on some undisputed facts. The arguments will be easier to understand in light of the undisputed facts and some disputed facts.

When the debtor married Mr. Silvey in April 2004, she owned some real property where she operated a dance studio. The alleged fraudulent transfer involved this real property, and the court will refer to it as the real property or simply the property.

The real property was subject to liens securing debts to Suntrust Bank and Dixstar, Inc. The debtor and Mr. Silvey discussed providing her with $250,000 to help alleviate her financial problems. They were not contemplating a loan to her but intended to use the real property as collateral and then promptly sell it to pay off the debt. For purposes of the summary judgment motions, the trustee does not dispute this account of events leading up to the loan.

In August 2004 the debtor executed and recorded a deed of the real property to Mr. Silvey for the purpose of making him and her tenants by the entirety. Mr. Silvey did not know before the transfer that the debtor intended to make him a tenant by the entirety. He did not provide the debtor any consideration for the transfer. The debtor intended the transfer to give Mr. Silvey peace of mind with regard to the proposed loan. For convenience, the court may refer to the transfer to Mr. Silvey as a transfer of the real property or a transfer of the equity to him, even though those descriptions are not exactly accurate.

In early September 2004 Mr. Silvey and Silvey Sheet Metal obtained a loan of $250,000 from AmSouth Bank. The loan was made to Silvey Sheet Metal and guaranteed by Mr. Silvey. The debtor and Mr. Silvey gave AmSouth a mortgage on the real property to secure the debt, but the debtor did not become personally liable for the debt. The loan proceeds were

used to pay loan fees to AmSouth Bank and the secured debts to Suntrust Bank and Dixstar so that their liens would be released. Mr. Silvey, as the principal in Silvey Sheet Metal, received a check for the remainder of the loan, almost $116,000. He endorsed the check, and it was deposited in the debtor's business account. All the parties understood before the loan was made that the debtor would receive the net amount after paying AmSouth and the secured debts and that she would use it to pay her debts. The parties agree that the debtor used the money, about $116,000, to pay her debts.

In August 2005 the debtor and Mr. Silvey sold the property to Dorothy Davis for $290,000. Ms. Davis paid $20,000 in cash and executed a promissory note to the debtor and Mr. Silvey for $270,000. Since the debtor and Mr. Silvey were in effect financing the sale, they did not receive cash to pay off the debt to AmSouth. AmSouth knew of the sale in advance and did not object. AmSouth agreed that its mortgage would remain on the property, and Silvey Sheet Metal would continue to make payments on the secured debt. The trustee disputes the debtor's assertion that she received the $20,000 in cash and used it for paying taxes on the real property and expenses of her minor children. The debtor's later brief says that she received more than $10,000 and used it to pay her debts.

Between the time of the loan from AmSouth and the sale to Ms. Davis, the debtor made three monthly payments. The total should be $6,128.13. Silvey Sheet Metal or Mr. Silvey made eight monthly payments to AmSouth in the same period; those payments totaled $16,341.68.

Paragraph 18 of the debtor's statement says:

> The monthly payment to AmSouth Bank is $2,042.71 and the monthly payment from Ms. Davis is $2,426.84. The difference between the payments is being retained by [Silvey Sheet Metal] for making the funds available to the Debtor, for the risk of non-payment by Ms. Davis and for the eight mortgage payments made prior to Ms. Davis purchasing the real property.

The trustee's response is: "Paragraph 18 . . . is a conclusion, not a fact and is therefore disputed." This response is not exactly accurate since the trustee elsewhere agrees with everything up to the part of the second sentence beginning with "for making." That part of the second sentence is not a statement of fact but an argument that Silvey Sheet Metal has the legal right to keep the difference between the payments. Of course, the trustee disagrees with that part of the paragraph, and the court will treat the response as disagreeing only with that part of the paragraph.

The debtor filed this bankruptcy case in June 2006.

## DISCUSSION

The trustee seeks to avoid the transfer under § 544(b) of the bankruptcy code and Tennessee law. Section 544(b) allows the trustee to assert the state law rights of the debtor's actual creditors. The statute requires the trustee to prove there is an actual creditor who has an allowable claim in the bankruptcy case and can avoid the transfer under Tennessee law. 11 U.S.C. §§ 544(b) & 542(e). Neither party has addressed the question of whether there is an actual creditor who has an allowable claim in the bankruptcy case and could avoid the transfer under the Tennessee statutes relied upon by the trustee. Some statutes allow avoidance only by a present creditor, one who was a creditor at the time of the transfer. Tenn. Code Ann. §§ 66-3-306 & 66-3-101; see *In re Turner*, 78 B.R. 166 (Bankr. E. D. Tenn. 1987) (exceptions to the rule for § 66-3-101). Other statutes allow avoidance by present or future creditors. Tenn. Code Ann. § 66-3-305(a). The affidavit of the debtor's ex-husband states that he was a creditor at the time of the transfer, he is still a creditor, and he has filed a claim in the debtor's bankruptcy case. That apparently resolves the question.

The trustee may also be able to amend the complaint to rely on § 548 of the bankruptcy code. The debtor filed this bankruptcy case in June 2006, after the effective date of an amendment making § 548 apply to transfers within two years before the bankruptcy case was filed. 11 U.S.C. § 548(a); Pub. L. 109-8 §§ 1402(1) & 1406(b)(2); 119 Stat. 23, 214-216

(2005). The two years would include August 2004 when the debtor made the transfer to Mr. Silvey. The elements of a fraudulent transfer under § 548(a)(1)(B) are essentially the same as the elements under the Tennessee statutes, but the trustee would not be required to prove the existence of an actual creditor who can avoid the transfer and has an allowable claim in the bankruptcy case.

Two of the Tennessee statutes allow a creditor to avoid a transfer that was a constructive fraud on creditors. Tenn. Code Ann. §§ 66-3-305(a)(2) & 66-3-306. Two of the statutes allow a creditor to avoid a transfer made by the debtor with the actual intent to hinder, delay, or defraud creditors. Tenn. Code Ann. § 66-3-101 & 66-3-305(a)(1). The court will deal first with the question of summary judgment under the statutes requiring actual intent to hinder, delay or defraud creditors.

When a wife transfers her real property to create a tenancy by the entirety with her husband, the transfer greatly reduces the value of the property as a source for payment of her debts compared to debts owed jointly by her and her husband. The transfer may be avoidable as a fraud on her creditors. *Gordon v. Courtney (In re Courtney)*, 351 B.R. 491 (Bankr. E. D. Tenn. 2006) (objection to discharge); *Federal Deposit Insurance Corp. v. Church (In re Church)*, 47 B.R. 186 (Bankr. E. D. Tenn. 1985); *Mann v. Shepard (In re Gervich)*, 570 F.2d 247 (8th Cir. 1978); *Meininger v. Miller (In re Miller)*, 188 B.R. 302 (Bankr. M. D. Fla. 1995).

The court is concerned now with whether the debtor transferred the property to Mr. Silvey with actual intent to hinder, delay or defraud her creditors. The trustee contends that the debtor obviously transferred the real property to Mr. Silvey with actual intent to hinder, delay, or defraud her creditors. The defendants contend the debtor had a different motive not involving that intent. The court can grant summary judgment only if there is no genuine issue of material fact, and based on the undisputed facts, the law entitles the moving party to judgment in its favor. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c).

The briefs filed by the debtor and the trustee deal extensively with the badges of fraud set out in § 66-3-305(b). The trustee argues that enough badges of fraud exist to raise a presumption and require the debtor to produce evidence showing a lack of intent to harm creditors. The debtor's response is that she did not intend the transfer to harm her creditors. The debtor asserts that she transferred the real property to Mr. Silvey because she thought he would be less worried about obtaining a large loan for her benefit if he had an ownership interest in the real property securing the debt, and furthermore, she obviously did not intend the transfer to harm to her creditors since she intended to and actually did use the loan to pay her debts.

In cases such as this, the question is whether the debtor has a plausible reason for the transfer other than the intent to hinder, delay or defraud creditors. If so, the court is faced with a question of intent that must be decided at trial after hearing the debtor and other witnesses testify and judging their credibility. The debtor's explanation is sufficient to create a dispute as to her intent despite the badges of fraud asserted by the trustee. *United States v. Alfano*, 34 F.Supp.2d 827 (E. D. N. Y. 1999); *Macon Bank and Trust v. Holland*, 715 S.W.2d 347 (Tenn. Ct. App. 1986); *Neshewat v. Salem*, 365 F.Supp.2d 508 (S. D. N. Y. 2005); *Rowlands v. Fraser (In re Rowlands)*, 346 B.R. 279 (1st Cir. B.A.P. 2006); 10B Charles A. Wright, et al., *Federal Practice and Procedure* § 2730. On the other hand, the badges of fraud asserted by the trustee are sufficient to create a dispute as to whether the debtor's explanation is true. The trustee and the defendant have thoroughly criticized each other's interpretation of the facts. Indeed, they have done such a good job that they have unintentionally cooperated in showing that neither side should be granted summary judgment on the question of whether the debtor had the actual intent to hinder, delay or defraud creditors. There is a genuine issue of material fact as to the debtor's intent.

The court's statement of facts has omitted facts asserted by the trustee with regard to (1) the debtor's divorce before she married Mr. Silvey, (2) the course of the debtor's

payments to her ex-husband, (3) the effect of a letter concerning those payments that was received by the debtor's divorce lawyer more than two months before the transfer to Mr. Silvey, and (4) other facts related to the debtor's intent with regard to paying her ex-husband. The debtor's response undercut the trustee's statement or interpretation of those facts to the point of showing that there is obviously a genuine issue of material fact with regard to the debtor's intent.

The court turns now to the question of summary judgment on the constructive fraud counts of the complaint. Reading the two constructive fraud statutes together, they require proof that:

> The debtor did not receive reasonably equivalent value in exchange for the transfer; and
>
> (1) the debtor was engaged in or about to engage in a business or transaction for which her remaining assets were unreasonably small in relation to the business or transaction; or
>
> (2) the debtor intended to incur, or believed or reasonably should have believed that she would incur debts beyond her ability to pay as they became due; or
>
> (3) the debtor was insolvent at the time of the transfer or was rendered insolvent by the transfer.

Tenn. Code Ann. §§ 66-3-305(a)(2) & 66-3-306.

Elements (1) and (2) come from § 66-3-305(a)(2). The defendants have not admitted facts in the answer to the complaint or the brief in support of summary judgment that would prove either (1) or (2). The documents and affidavits submitted by the trustee and the defendants in support of their summary judgment motions do not establish either (1) or (2). As a result, the trustee is not entitled to summary judgment under § 66-3-305(a)(2).

Element (3) comes from § 66-3-306. It requires proof the debtor was insolvent at the time of the transfer or the transfer rendered her insolvent. The defendants' answer and their brief in support of their motion for summary judgment do not admit insolvency or facts that prove

insolvency. The undisputed facts establish that the debtor owed a large amount of debts at the time of the transfer. The trustee relies on this fact and Mr. Silvey's statement in his affidavit that the debtor had no assets. The debtor obviously had a valuable asset in the real property. In this situation, proof of insolvency requires a comparison of the value of the debtor's assets to the amount of her debts. Mr. Silvey's statement also does not amount to that kind of comparison, and as a result, it does not prove the debtor's insolvency at the time of the transfer. Tenn. Code Ann. § 66-3-303(a).

The trustee also relies on a statement in the defendants' brief with regard to summary judgment: "The Court may consider that the Debtor was insolvent at the time of the transfer or was rendered insolvent thereby." This statement is part of the defendants' argument on the question of whether the debtor transferred the property to Mr. Silvey with actual intent to hinder, delay, or defraud creditors. The argument is concerned with the badges of fraud set out in § 66-3-305(b). The point seems to be that even if the debtor was insolvent, she did not have the actual intent to harm creditors. The statement is essentially an assumption for the purpose of argument and not an admission.

The defendants' brief subsequently states that the court can treat the transfer to Mr. Silvey as avoidable. The statement is made as a basis for the defendants' argument that they are entitled to the profit from the sale to Ms. Davis. If the transfer to Mr. Silvey is avoided, he does not have a right to the profit as a co-owner of the property, but he might be entitled to it on other grounds. In this regard, the defendants argue that either Mr. Silvey or his company has a right to the profit as compensation for obtaining the loan. The defendants' statement again is an assumption for the purpose of argument and not an admission of insolvency.

The court has also not found an admission by the debtor that when she made the transfer to Mr. Silvey, she was not paying her debts as they became due. That would raise a presumption of insolvency that the debtor would be required to rebut. Tenn. Code Ann. § 66-3-303(b).

The defendants may not have intended to dispute the debtor's insolvency at the time of the transfer, but the pleadings and undisputed facts do not allow the court to conclude that she was insolvent at the time. The result is that the trustee apparently is not entitled to summary judgment under § 66-3-306. The defendants are not entitled to summary judgment either because there are disputed material facts, such as the debtor's insolvency.

The trustee makes another argument that raises questions as to the meaning of the constructive fraud statutes. Even if the argument is correct, it may not entitle the trustee to summary judgment holding that the transfer can be avoided as constructively fraudulent. Nevertheless, the court may be able to grant or deny summary judgment on issues raised by the argument, and that may aid the parties and the court in concluding this adversary proceeding.

The constructive fraud statutes do not allow a transfer to be avoided if the debtor received reasonably equivalent value "in exchange for" the debtor's transfer. For the purpose of argument the court can assume the debtor received reasonably equivalent value from the defendants *after* the transfer to Mr. Silvey. The question is whether the value was received "in exchange for" the transfer to Mr. Silvey. The trustee argues there was no exchange.

The debtor's transfer to Mr. Silvey could have been in exchange for his obtaining the loan if he or AmSouth required the transfer before the loan could be obtained. Neither the debtor nor Mr. Silvey has suggested that the transfer was required before Mr. Silvey would or could obtain the loan. This leads to an additional argument that the debtor received nothing "in exchange for" the transfer. The argument has at least three steps. First, Mr. Silvey could have obtained the loan to his company with his guarantee and a mortgage granted by the debtor as sole owner of the real property. Second, if that had been done, the debtor would have received the loan proceeds, *and* she would have kept the equity in the real property as a source for payment of her debts. Third, it follows that the debtor did not receive the loan in exchange for the transfer to Mr. Silvey; she only gave up a valuable asset she could have kept.

In several reported decisions, the courts have considered whether the debtor's donations to a church were required by the church in exchange for the benefits it provided. *Christians v. Crystal Evangelical Free Church (In re Young)*, 141 F.3d 854 (8th Cir. 1998), reinstating *United States v. Crystal Evangelical Free Church (In re Young)*, 82 F.3d 1407 (8th Cir. 1996); *Weinman v. Word of Life Christian Center (In re Bloch)*, 207 B.R. 944 (D. Colo. 1997); *Morris v. Midway Southern Baptist Church (In re Newman)*, 203 B.R. 468 (D. Kan. 1996); *Hartvig v. Tri-City Baptist Temple (In re Gomes)*, 219 B.R. 286 (Bankr. D. Ore. 1998); *Fitzgerald v. Magic Valley Evangelical Free Church (In re Hodge)*, 200 B.R. 884 (Bankr. D. Id. 1996), *reversed on other grounds*, 220 B.R. 386 (D. Id. 1998). Since the churches did not require or even expect the donations in exchange for benefits provided to the debtor, the courts concluded there was no exchange.

The defendants argue that their two transactions – the transfer to Mr. Silvey and his obtaining the loan for the debtor – were more like an exchange under a contract. After a contract has been made, each party's performance is in exchange for the other party's performance. It makes no difference that the parties were not required to enter into the contract. It also makes no difference to whether there was an exchange that the debtor might have made a better deal. Of course, if the exchange was a very bad deal for the debtor, that is evidence of intentional fraud structured as a valid exchange. *Barber v. Golden Seed Co.*, 129 F.3d 382 (7th Cir. 1997).

The trustee contends there was no exchange because Mr. Silvey never made a binding promise to the debtor to obtain the loan. The court disagrees. The debtor and Mr. Silvey have completed the transactions that are alleged to have been an exchange. The debtor made and recorded the transfer to Mr. Silvey. He obtained the loan, and she received the proceeds. The existence of an enforceable contract for these transfers would be evidence of an exchange. Likewise, if Mr. Silvey obtained the loan pursuant to a binding promise to the debtor, then there almost certainly was an exchange. This reasoning does require a converse rule that the events

could be an exchange only if the defendants had a prior legally binding obligation to provide the loan proceeds to the debtor. The word "exchange" does not support that result. "Exchange" appears to mean a swap, one thing for the other. Its definition cannot easily be limited to transactions in which the defendant had, before actually providing the value to the debtor, a legally enforceable obligation to provide it. The lack of an prior enforceable contract or promise by Mr. Silvey would not prevent the two transactions from being an exchange. *Congrove v. McDonald's Corp. (In re Congrove)*, 222 Fed.Appx. 450, 2007 WL 130414 (6th Cir. Jan. 10, 2007); compare *Pergament v. Reisner (In re Reisner)*, 357 B.R. 206 (Bankr. E. D. N. Y. 2006).

The sixth circuit's unreported decision in *Congrove* involved an agreement between the debtor and McDonald's for termination of the debtor's franchises. The final written agreement failed to include McDonald's promise to pay some of the debtor's debts, but McDonald's paid over $700,000 of his debts. The court held that the transaction was an exchange. The court reasoned that there could be an exchange without a binding contract or promise or even an agreement explicitly providing for the exchange. The question was whether there was in fact an exchange. *Congrove v. McDonald's Corp. (In re Congrove)*, 222 Fed.Appx. 450, 2007 WL 130414 (6th Cir. Jan. 10, 2007). Obviously, the intent of the parties is relevant to deciding whether there was an exchange even though the constructive fraud statutes generally are not concerned with intent.

Though Mr. Silvey obtained the loan after the transfer by the debtor, the law has long recognized that the debtor can receive value in exchange for an earlier transfer. *Harper v. Lloyd's Factors, Inc.*, 214 F.2d 662 (2d Cir. 1954); *Moister v. Eidson (In re Eidson)*, 10 B.R. 432 (Bankr. N. D. Ga. 1981).

The facts of this case remove any need to deal with the value of a promise to obtain the loan that Mr. Silvey may have made before the debtor's transfer to him. The *Chomakos* decision discussed by the parties dealt with a different problem. If the debtor paid for an investment that turned out to be worthless, what value did the debtor receive in return for the

payment? *Allard v. Flamingo Hilton (In re Chomakos)*, 69 F.3d 769 (6th Cir. 1995). The *Chomakos* decision held that the value to the debtor of a wager made at a casino had to be determined at the time of the wager. The *Chomakos* decision did not establish a general rule that value provided by the defendant can be part of an exchange or counted as value only if it is received at the time of debtor's transfer or immediately afterward.

In summary, Mr. Silvey's obtaining the loan for the debtor could have been in exchange for her transfer of the real property to him even though he never had a legally enforceable obligation to the debtor to obtain the loan, and it was obtained after the transfer. This decision does not make irrelevant the trustee's argument that the debtor's transfer was not required for Mr. Silvey to obtain the loan. The trustee can argue that the debtor used the prospect of Mr. Silvey's obtaining the loan to hide her true reasons for the transfer to him, to make him a co-owner because he was her husband and to protect the equity from her creditors. This theory is relevant to the actual fraud allegations, and under the constructive fraud statutes, it is relevant to whether the parties intended an exchange.

This brings the court to the question of whether either party is entitled to summary judgment on the issue of whether there was an exchange. Summary judgment can be granted only if the undisputed facts leave no doubt on the issue. The debtor made the transfer to facilitate the loan. She thought that Mr. Silvey would be less doubtful or hesitant about obtaining the loan if he had ownership interest in the real property securing the debt than if the property belonged only to her. This makes some sense. In return for obtaining the loan Mr. Silvey would receive more than just the benefit of the property as collateral for the loan. If the property eventually sold for more than enough to pay the loan debt, Mr. Silvey's interest as a tenant by the entirety would give him an interest in the equity received from the buyer.

The trustee takes this view of the facts as undeniable proof that the debtor intended to give Mr. Silvey an interest in the potential equity and to protect it from the claims of her creditors. The court has already denied summary judgment on the question of actual intent

to defraud. At this point, the argument relates to whether the transactions could have been a true exchange.

The debtor's explanation of her intent is consistent with an exchange even though she did not think the transfer was required before Mr. Silvey would obtain the loan. She thought the transfer was needed for him to obtain the loan. Though the concept of an exchange is broad, it still seems to mean that Mr. Silvey's intent must have been the same or similar to the debtor's intent. Indeed, the decisions dealing with whether there was an exchange focus more on the defendant's intent.

For example, the debtor's apparently gratuitous payments on another person's debt were not a *quid pro quo* for the other person's referral of business to the debtor. *Meeks v. Don Howard Charitable Remainder Trust (In re Southern Health Care of Arkansas, Inc.)*, 309 B.R. 314 (8th Cir. B.A.P. 2004).

In another case, the debtor's wife made payments for his benefit in the ordinary course of their married life; the payments were not made in exchange for his allegedly fraudulent transfer to her. *Cure v. Krottinger*, 2001 WL 258619 (N. D. Tex. Mar. 12, 2001).

In still another case, two 50% shareholders agreed to settle a corporate control lawsuit. The corporation, however, had the obligation to make the settlement payments to the withdrawing shareholder. Months after the corporation started making the payments, it needed to change its accounting to show them as loans to the controlling shareholder. He agreed to repay the corporation. The controlling shareholder's agreement to repay the corporation was not made in exchange for the corporation's payments to the withdrawing shareholder. It could not be taken into account in deciding whether the corporation received reasonably equivalent value in return for the payments. *Advanced Telecommunication Network, Inc. v. Allen (In re Advanced Telecommunication Network, Inc.)*, 490 F.3d 1325 (11th Cir. 2007).

The church donation cases also deal with the intent of the churches. Even if the debtor considered the donations necessary for a number of reasons, the church did not view

them as a condition to the debtor's participation in the church or receipt of other benefits from the church.

The debtor argues that additional facts are needed to determine what the debtor and Mr. Silvey were thinking during the time of the transactions. In his affidavit Mr. Silvey does not exactly say that no exchange was contemplated. He states that he did not know about the debtor's transfer to him before she did it. The debtor agrees with this statement. Mr. Silvey does not deny having prior discussions with the debtor about becoming a co-owner of the property or acquiring an interest in the equity. Since they were married and the property was going to secure his company's debt that he guaranteed, the idea of making him a co-owner would have been natural. The court agrees with the debtor that the undisputed facts do not justify summary judgment on the ground that the debtor's transfer to Mr. Silvey was not in exchange for his obtaining the loan. The court prefers to have a more detailed knowledge of the facts leading up to the loan. More facts may allow the court to avoid some difficult questions. What intent must be proved to show that the parties intended an exchange? Or, how strong a connection must have existed between transactions for the law to treat them as an exchange? More facts should also allow a less abstract decision.

This brings the court to the question of reasonably equivalent value. The defendants seek summary judgment in their favor on the ground that the debtor received reasonably equivalent value. Of course, summary judgment is not possible on that ground because the court could not grant summary judgment on the question of whether the debtor's transfer and Mr. Silvey's obtaining the loan were an exchange. Nevertheless, the court may be able to grant summary judgment on the question of reasonably equivalent value so that it can be eliminated from the remaining questions as to constructive fraud. The question, then, is whether the value provided by Mr. Silvey was reasonably equivalent to the value of the property transferred to him.

The defendants have made the point that the transfer was not a simple transfer of all the debtor's interest in the property to Mr. Silvey. The transfer merely created a tenancy by the entirety and left the debtor with an interest in the property. The court is concerned, however, with the effect of the transfer on the debtor's creditors. For the purpose of argument, the court will treat the transfer as reducing the value of the property to the debtor's unsecured creditors to zero.

The defendants contend that the value received by the debtor included not only the loan but also the value of Mr. Silvey's help in obtaining the loan. The value of Mr. Silvey's help in obtaining the loan supposedly justified the transfer of the equity to him. The undisputed facts support the theory that the debtor transferred the equity to Mr. Silvey in return for his help in obtaining the loan. The debtor and Mr. Silvey apparently expected the property to be worth more than the loan amount, and the debtor intended to give Mr. Silvey an interest in the equity to facilitate his obtaining the loan.

For the purpose of argument, the court will take the sale price of the property about a year after the debtor's transfer to Mr. Silvey as the value at the time of the transfer. This means that the debtor transferred to Mr. Silvey property worth $290,000 in return for the loan of $250,000. Thus, she transferred $40,000 equity to Mr. Silvey in return for his help in obtaining the loan. The defendants contend that the transfer actually involved only $20,000 equity because the debtor received the $20,000 cash payment from the purchaser, Ms. Davis. The trustee disputes whether she used that amount to pay her debts. The court need not be concerned with the dispute. The court can work with the assumption that Mr. Silvey received $20,000 to $40,000 in equity in return for his help in obtaining the loan.

With Mr. Silvey's help, the debtor obtained cash from the equity and used it to pay her debts. She received the equivalent of a non-recourse loan secured by the property, particularly the equity. The loan totaled roughly $116,000 to $136,000 out of the total equity of about $156,000. Based on these amounts, the loan was about 74 % to 87% of the equity. Mr.

Silvey's help in obtaining the loan appears to have provided value to the debtor, but the undisputed facts and the arguments of the parties do not resolve that question. They certainly do not establish the value of Mr. Silvey's help, and it must be established before it can be counted as value. *Baumgart v. Bedlyn (In re Empire Interiors, Inc.)*, 248 B.R. 305 (Bankr. N. D. Ohio 2000). The result is that the court cannot grant summary judgment to the defendants declaring that the loan amount plus the value of Mr. Silvey's help in obtaining the loan were reasonably equivalent value.

      The defendants argue that the loan amount itself was reasonably equivalent value or close enough to create a genuine issue of material fact. Mr. Silvey's affidavit states that the property had been appraised at $265,000 to $290,000. The $250,000 loan might have been reasonably equivalent to $265,000. This amounts to arguing that reasonably equivalent value would allow $15,000 in equity above the amount of the loan. The property sold for $290,000 about a year after the transfer to Mr. Silvey. The sale price casts doubt on the $265,000 valuation. A transfer of property worth $40,000 or 16% more than loan amount is less likely to be a transfer for reasonably equivalent value. For the purpose of argument, the court assumes the debtor received $20,000 of the equity back when the property was sold and she received the $20,000 cash payment. The result would be that Mr. Silvey received property worth $20,000 more than the loan amount. The defendants have not convinced the court that the loan amount was reasonably equivalent value for the transfer to Mr. Silvey of property worth $20,000 more. A $20,000 profit or fee for help in obtaining the loan might or might not be considered normal. The court also cannot ignore the debtor's continued interest in the equity free of the claims of her creditors if the transfer to Mr. Silvey is upheld. A transfer of the equity to him individually might be justified when a transfer that allowed the debtor to retain an interest in the equity as a tenant by the entirety would not. Obviously there are genuine issues of material fact with regard to whether the loan amount was reasonably equivalent to the value of the property transferred to Mr. Silvey.

The trustee's complaint seeks damages, not avoidance of the transfer to Mr. Silvey, the transfer to AmSouth, or the transfer to Ms. Davis. The parties have submitted opposing briefs and affidavits as to the value of the property transferred. The court is not convinced that either party's calculation is correct. The trustee does not seek summary judgment on the question of damages, and the defendants' response disagrees with the trustee's method of calculation.

The defendants contend they gave value by making the eight mortgage payments to AmSouth, or the payments entitle them to a reduction in the amount the trustee can recover if the transfer is avoidable. Neither argument is especially clear to the court at this point. The payments may have increased the debtor's and Mr. Silvey's equity in the property at the time of the sale, but how was that increase in value provided to the debtor in exchange for the transfer, and how is it related to the value the trustee may be able to recover? The court cannot grant summary judgment on this issue because the relevant facts are undecided.

On another issue concerning damages, the trustee argues that he may be able to recover the entire amount of the equity at the time of the transfer to Mr. Silvey without a reduction for the $116,000 the debtor received from the loan. The trustee focuses on the first in a series of transfers. First, the debtor transferred the property to Mr. Silvey to create a tenancy by the entirety. Second, they mortgaged the property to AmSouth Bank in return for the loan to Silvey Sheet Metal. Third, after paying debts secured by the real property, Silvey Sheet Metal gave the balance to the debtor or loaned it to her without recourse but secured by the real property. Generally a mortgage to secure a loan is not avoidable as a constructive fraud on creditors of the borrower. The borrower receives the loan proceeds, and the equity remains subject to the claims of the borrower's creditors. Tennessee Code Ann. § 66-3-306, Official Comment 3. The debtor's transfer to Mr. Silvey gave him an ownership interest in the property and protected the property from the debtor's creditor's. The transfer did not simply create a lien on the property to secure a debt. The real problem with the transfer to Mr. Silvey appears to be

the transfer of the equity over and above the loan debt to AmSouth. This fact does not necessarily mean the trustee's recovery of damages for the transfer to Mr. Silvey would be reduced by the $116,000 the debtor received from the loan. 11 U.S.C. § 550(a), (e); *compare* Tenn. Code Ann. § 66-3-309(c), (d). Furthermore, this question logically should wait until a decision on the question of whether the transfer can be avoided. The trustee does not ask for summary judgment on this question. The court is not convinced by the defendants' argument that the transfers should be taken together as having the same effect as a non-recourse loan to the debtor secured by her real property. The defendants may or may not be entitled to credit for the cash loan proceeds that were provided to the debtor. 11 U.S.C. § 550(a), (e); *compare* Tenn. Code Ann. § 66-3-309(c), (d).

   The court will enter an order. This memorandum constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052; Fed. R. Civ. P. 52.

###