

**SIGNED this 20 day of March, 2009.**

_____
R. Thomas Stinnett
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | |
|---|---|
| In re | Case No. 06-11860 |
| | Chapter 7 |
| Maria Esperanza Silvey, | |
| a/k/a Maria Esperanza Duke, | |
|     Debtor | |
| | |
| Jerrold D. Farinash, Trustee | |
|     Plaintiff | |
| v. | Adversary Proceeding |
| | No. 06-1147 |
| Darrel Crow Silvey & | |
| Silvey Sheet Metal Company | |
|     Defendants | |

Appearances:    Jerrold D. Farinash and Richard T. Klingler, Kennedy, Koontz & Farinash, Chattanooga, Tennessee, for the Plaintiff

Thomas E. Ray, Samples, Jennings, Ray & Clem, Chattanooga, Tennessee, for the Defendants

The Honorable R. Thomas Stinnett
United States Bankruptcy Judge

## **MEMORANDUM**

    The debtor, Maria Silvey, transferred real property to her husband, Darrel Silvey, within two years before she filed bankruptcy. The bankruptcy trustee brought this suit to avoid the transfer or recover damages. The court declined to avoid the transfer and granted the trustee a judgment against Darrel Silvey for damages. This memorandum deals with the trustee's motion to alter or amend the judgment. According to the trustee, the court could not award damages because he withdrew the request for damages at the beginning of the trial. The trustee also contends the judgment should only avoid the transfer because the award of damages is an unworkable remedy.

    In 2004 Maria Silvey was the sole owner of real property where she operated a business. Maria transferred the real property to her husband, Darrel Silvey, to make the two of them owners as tenants by the entirety. The Silveys then mortgaged the property to AmSouth Bank to secure a $250,000 loan to Darrel Silvey. The purpose of the loan was to obtain money for Maria to pay her debts, but she is not personally liable on the debt to AmSouth. Only Darrel Silvey is personally liable. After paying the existing mortgage debts and the costs of obtaining the loan, the balance of the $250,000 was paid to Maria Silvey for her use.

    The court's opinion failed to make clear that Darrel Silvey's note and mortgage to AmSouth requires a balloon payment. The amount of the 119 monthly installment payments is based on amortizing the debt over 15 years, but the note requires the debt to be paid off at the end of ten years. The 120th payment in September 2014 would be a balloon payment of the balance due.

    About a year after obtaining the loan from AmSouth, Maria and Darrel Silvey sold the property for $290,000. The buyer made a $20,000 down payment that Maria Silvey received and used to pay her debts and expenses. The buyer executed a promissory note for $270,000 plus interest and a mortgage to secure the note. The first payment was due on October 1, 2005. Maria and Darrel Silvey are joint payees of the note and joint beneficiaries of the mortgage. The buyer's monthly payments were based

on amortization over 15 years, but the note requires a balloon payment of the balance due at the end of five years. The buyer's balloon payment is due in the 60th month, September 2010.

The sale was obviously a wraparound transaction. The parties intended that the buyer's payments would pay Darrel Silvey's mortgage debt to AmSouth. Since AmSouth trusted Darrel Silvey's ability to pay the mortgage debt, it did not object to the sale. It chose not to enforce the due on sale clause in the deed of trust (mortgage). The seller financing provided by the Silveys suggested that $290,000 was a high price for the property.

The trustee argued that the transfer to Darrel Silvey was intended to defraud Maria Silvey's creditors, especially her ex-husband. The court rejected that argument but held that the transfer to Darrel Silvey was avoidable as a constructive fraud on Maria Silvey's creditors because she received nothing of value in exchange. In particular, Darrel Silvey did not give Maria the proceeds of the AmSouth loan in exchange for her transfer to him. The evidence did not show bad faith by Darrel Silvey in any of the transactions involving the property. The court decided that a judgment for damages was a just and workable remedy for the trustee instead of avoiding the transfer to Darrel Silvey.

At the beginning of the trial, the trustee withdrew the claim for damages. The trustee contends that this action prevented the court from awarding damages instead of avoiding the transfer. The law generally allows a court to grant the appropriate remedy even if the prevailing party did not request it. Fed. R. Civ. P. 54(c); Fed. R. Bankr. P. 7054.

This rule is subject to an exception based on unfair and prejudicial surprise. The exception does not apply when the parties prepared for and litigated a particular remedy even though it was not raised in the pleadings. In that situation neither party should be unfairly surprised or prejudiced by a late request for the remedy or by the court's judgment for the remedy. On the other hand, the pleadings and the pre-trial preparation may have given one party good reasons to believe a particular remedy was not being sought and would not be considered or granted by the court. In that situation the court usually should not grant the remedy because doing so will prejudice the surprised party. Fed. R. Civ. P. 15(b); Fed. R. Bankr. P. 7015; *International Harvester Credit Corp. v. East Coast Truck*, 547 F.2d 888 (5th Cir. 1977);

*Stewart v. Furton*, 774 F.2d 706 (6th Cir. 1985); *Foodcomm Int'l v. Barry*, 463 F.Supp.2d 818 (N. D. Ill. 2006).

The courts have expressed another exception to Rule 54(c). The court should not grant a remedy it deems appropriate when neither party desires the remedy. This exception clearly applies when: (1) before the court entered the judgment the parties had expressed to the court that none of them wanted the remedy; (2) after the judgment the parties asked the court to grant a different remedy. *Robinson v. Lorillard Corp.*, 444 F.2d 791 (4th Cir. 1971); *Minyard Enterprises v. Southeastern Chemical & Solvent Co.*, 182 F.3d 373 (4th Cir. 1999). The meaning of the exception is less certain in other situations. The exception appears to be a variation on the unfair and prejudicial surprise exception. Any party to a lawsuit may be prejudiced by a remedy the court deems appropriate if the parties justifiably thought the remedy was out of the question and would not be considered or granted by the court.

The trustee's complaint against Darrel Silvey and his company and the amended complaint both asked for damages as an additional or alternative remedy. The defendants were prepared at the trial to argue the amount of damages as an alternative to avoiding the transfer. At the beginning of the trial, the trustee withdrew the request for damages. If the trustee simply wanted to put additional pressure on the defendants, he can hardly complain that the tactic did not work because the law still allowed the court to award damages.

The trustee doubtlessly wanted avoidance of the transfer because he thinks it will produce a larger recovery for the bankruptcy estate than an award of damages. Before the trial the trustee had to know the defendants preferred the remedy of damages and were prepared to argue damages at the trial as an alternative remedy. The court can treat the trustee as knowing the law, as knowing that the court could award damages despite his withdrawal of the request. Thus, withdrawing the request for damages only indicated the trustee's opinion that avoidance of the transfer would be a better remedy than damages. The court disagreed and determined that a better remedy was a judgment for damages that could be collected immediately.

In summary, the trustee cannot argue unfair or prejudicial surprise on the theory that he reasonably believed his withdrawal of the request for damages would prevent the court from granting damages as the sole remedy. *Starter Corp. v. Converse, Inc.*, 170 F.3d 286 (2d Cir. 1999).

The trustee also argues that the court's judgment for damages created an unworkable result because it left him with Maria Silvey's interest as a tenant by the entirety in the note and mortgage from the buyer. The court's calculation of damages clearly revealed the court's intent to deny the bankruptcy estate a continuing interest in the note and mortgage from the buyer. The court intended to allow the Silveys to be the holders of the buyer's note and mortgage free of any claim by the trustee. The problem with the court's order was failure to state what the opinion made clear – that the damages imposed on Darrel Silvey were intended to pay the bankruptcy estate for the buyer's note and mortgage. The court should be able to correct that problem since it rejects the trustee's arguments that he controls the choice of remedy.

The trustee contends, however, that the court cannot divest the bankruptcy estate of its interest in the note and mortgage as part of creating an appropriate remedy in this adversary proceeding. The bankruptcy code provides that the bankruptcy trustee cannot be allowed a double recovery as the result of avoiding a transfer. 11 U. S. C. § 550(d). The court intended to calculate the damages as the value of the buyer's note secured by the mortgage. The trustee cannot recover that amount as damages and still retain an interest in the note or the mortgage. That would allow the bankruptcy estate to recover twice. The court's intent was obvious from the memorandum opinion, but the court failed to include a consistent provision in the judgment.

As a procedural matter, creditors and other parties to the bankruptcy case do not need the opportunity to object to divesting the bankruptcy estate of its interest in the note and mortgage. The trustee is the representative of the bankruptcy estate. He has tried the adversary proceeding, and the court has granted a judgment for damages in place of the bankruptcy estate's interest in the note and mortgage. Neither the court nor the Silveys needs to invoke the procedure for compelling abandonment of estate property. 11 U.S.C. § 554; Fed. R. Bankr. P. 6007.

The trustee's arguments up to this point do not require the court to undo or modify the judgment for damages. The trustee makes an underlying argument that avoidance of the transfer will be fair to the defendants and will produce a larger recovery for the bankruptcy estate. Avoidance of the transfer to Darrel Silvey would not automatically make Maria's transfer to AmSouth avoidable by the trustee; Maria received the benefit of the loan. Likewise, avoiding the transfer of the real property to Darrel Silvey would not automatically make the sale avoidable. The real question is whether including Darrel Silvey as a payee and mortgagee of the buyer would be avoidable.

The court's opinion rejected the trustee's argument that Maria Silvey transferred to Darrel Silvey her right to payment from the buyer. The trustee's motion to alter or amend the judgment suggests he was attempting to make a different argument: if Maria's transfer of the real property to Darrel is avoided, then the buyer's note and mortgage were fraudulent as to Maria's creditors to the extent they included Darrel Silvey. For the purpose of argument, the court assumes that including Darrel Silvey in the buyer's note and mortgage was a transaction that might be avoidable as a transfer, creation of a fraudulent debt, or other parting with property.

The court's reasoning in its earlier opinion supports the conclusion that the Silveys did not structure the sale transaction with the actual intent to defraud Maria's creditors. The issue is whether making Darrel Silvey a payee and mortgagee of the buyer was a constructive fraud on Maria's creditors. Would avoiding the real property transfer to Darrel Silvey automatically make the inclusion of him as a payee and mortgagee of the buyer avoidable on the ground of constructive fraud?

Even if Maria Silvey had been the sole owner and seller of the property, she had a good reason to make Darrel Silvey a payee and mortgagee of the buyer. The sale was a wraparound transaction. The buyer did not agree to buy the property subject to the AmSouth mortgage by paying the Silveys only for their equity. The buyer agreed to pay the full value of the property to the Silveys with the understanding that Darrel Silvey would remain liable for paying his mortgage debt to AmSouth. If Maria had been the sole owner and seller, she would have had an obligation to the buyer, at least while the buyer was making payments, to assure payment of Darrel's mortgage debt to AmSouth. If Maria had no such obligation, the

buyer's rights under the sale contract would have been illusory; Maria could have frustrated the sale without incurring contractual liability to the buyer. *Cf. Fuller v. McCallum & Robinson*, 22 Tenn.App. 143, 118 S.W.2d 1028 (1937); *Title Guaranty & Trust Co. v. Bushnell*, 143 Tenn. 681, 228 S.W. 699 (1921); *see also Hampton v. Minton*, 785 S.W.2d 854 (Tex. Ct. App. 1990); *Restatement (Third) Property: Mortgages* §§ 5.2 & 7.8 (1997). Making Darrel Silvey a payee and mortgagee was one method of recognizing and carrying out this obligation. The buyer could have favored including Darrel Silvey as a payee and mortgagee on the theory that it would impose a similar obligation on him even if he was not a co-owner and seller. This reasoning applies at least to the mortgage debt to AmSouth at the time of the sale. It may not apply to the entire mortgage debt, including Darrel's or Maria's pre-sale payments to AmSouth.

Suppose Maria had remained the sole owner of the property until it was sold, but before then she had been able to obtain a non-recourse loan for $250,000 secured by the property. She was able to obtain the loan only because Darrel Silvey guaranteed payment. Furthermore, Darrel agreed that he would not have any claim against Maria for payments he made on the loan debt. In that situation no one could successfully argue that providing for repayment of the entire mortgage debt from the sale proceeds would be a transfer to Darrel Silvey for less than fair equivalent value. The transactions that actually occurred had essentially the same effect. This reasoning applies to Darrel's or Maria's pre-sale payments on the mortgage debt.

Finally, Maria and Darrel Silvey always planned on Darrel's obtaining a loan secured by the property, using the loan proceeds solely for Maria's benefit, and using the money from a sale to pay Darrel's mortgage debt. Maria's transfer of the real property to Darrel was not part of this plan. But, the plan necessarily meant that Maria Silvey intended to use the sale proceeds to pay all of Darrel's mortgage debt to AmSouth. Including Darrel Silvey as a payee and mortgagee was part of an exchange. Maria received the benefit of Darrel's loan from AmSouth, and in return, Darrel was made a payee and mortgagee of the buyer so that he would be protected from loss on the debt to AmSouth.

The trustee cannot make a convincing argument that including Darrel Silvey as a payee and mortgagee of the buyer was a constructive fraud on Maria's creditors to the extent it was intended to pay

the mortgage debt to AmSouth, including pre-sale payments. The inquiry into constructive fraud must focus first on how much Darrel Silvey was entitled to receive as a payee and mortgagee over and above repayment of the mortgage debt to AmSouth.

A quick calculation reveals that Darrel and Maria should receive a profit of more than $33,000 if the buyer completes the purchase:

> Buyer's 59 installment payments (143,183.56) + Buyer's balloon payment (210,214.89) – Darrel's & Maria's 71 installment payments (145,032.41) – balance due to AmSouth at time of the buyer's balloon payment (174,940.54) = $33,425.50

This calculation of the balloon payments does not include daily interest on the balance due after the last installment payments. It also does not include prepayment penalties that would be owed by Darrel Silvey. Those would reduce the payoff to the Silveys. If the court allows Darrel reimbursement only for his nine pre-sale payments, the return to him would be close to $40,000 more than the amount needed to pay his debt to AmSouth.[1]

The net return of more than $33,000 raises a question. The difference between the principal amount of the buyer's note to the Silveys and the principal amount of Darrel Silvey's note to AmSouth was $20,000 (270,000 – 250,000). How could this $20,000 difference plus interest produce such a large net return for the Silveys? The Silveys made a year of payments on the AmSouth debt before the sale. Those payments reduced the principal, but the court's calculation subtracted the Silveys' pre-sale payments to AmSouth. The main reason for the large excess over $20,000 is the difference in interest rates. AmSouth charged Darrel Silvey 5.5%, but the Silveys charged the buyer 7%. The interest rate difference accounts for most of the large difference between the net return to the Silveys if the buyer completes the purchase and the $20,000 difference between the principal amounts of the debts.[2]

---

[1] Maria apparently made three of the twelve pre-sale payments to AmSouth. The court has also done a calculation of damages as of the month of the trial; it yielded almost the same amount of return to Darrel Silvey.

[2] The calculation was done by treating the buyer's note as providing for 5.5% interest.

Darrel Silvey argued that the interest rate difference was intended to compensate him for making the sale possible. In other words, he argued that a large part of the net return from the buyer's completion of the purchase will not be profit to him. The point of the argument is to reduce the difference between the value Darrel provided to Maria and the benefit to him if the buyer completes the purchase. The court assumes, for the purpose of argument, that the extra 1.5% interest included some profit but part of it was compensation to Darrel Silvey for enabling the sale. Suppose the compensation part was $10,000, which would be a reduction in the net return to Darrel Silvey as a payee and mortgagee if the buyer completes the purchase. The net return to him would still be a substantial amount, probably enough to justify a decision that making him a payee and mortgagee was a constructive fraud on the Maria's creditors.

The court's reasoning brings up another point raised by the trustee when he was seeking damages. He argued that Darrel Silvey was entitled to a lien only to the extent the AmSouth loan was used to pay the earlier mortgage debts, even though the excess from the AmSouth loan benefitted Maria Silvey. A decision by the sixth circuit court of appeals suggests that result is possible. *Suhar v. Burns (In re Burns)*, 322 F.3d 421 (6th Cir. 2003). In *Burns* the bankruptcy trustee avoided the unperfected mortgage of a refinancer who had paid off a prior mortgage debt. Avoiding the refinancer's lien freed the bankruptcy estate's ownership interest in the property from the lien, and another bankruptcy statute automatically preserved the avoided lien for the benefit of the bankruptcy estate. 11 U.S.C. § 551. The trustee's remedy was complete simply by avoiding the mortgage lien. The sixth circuit also reasoned, however, that since avoidance of the refinancer's lien did not involve recovery under § 550(a), the refinancer was not entitled to a lien under § 550(e).

Maria Silvey's transfer of the real property to Darrel Silvey did more than give him a lien, but it had similar effects. It left her with an ownership interest in the real property and possession. At the time of her bankruptcy, however, Maria Silvey did not have either. She and Darrel were the joint payees and mortgagees of the buyer. Avoiding the real property transfer to Darrel Silvey would not have the same effect as the lien avoidance in the *Burns* case. Suppose the court also avoids the inclusion of Darrel Silvey as a payee and mortgagee of the buyer. That also will not have the same simple effect as the lien

avoidance in *Burns*. The trustee wants the court in effect to re-make the sale so that Maria Silvey will be the sole seller, payee, and mortgagee. That remedy is likely to require action by the Silveys and the buyer, but only Darrel Silvey is a party to this lawsuit. The trustee also does not argue that either avoidance or both combined will affect AmSouth's mortgage. As Maria Silvey's successor, the trustee will have an obligation to the buyer to assure payment of the mortgage debt to AmSouth so long as the buyer continues her payments. In this situation the reasoning of *Burns* does not apply, and for the purpose of calculating damages, Darrel Silvey would be entitled to a lien to cover his payments to Amsouth to the extent not reimbursed from the buyer's payments. 11 U.S.C. § 550(e)(1), (2)(D).[3]

The court needs to deal with another possibility that probably underlies the trustee's argument. Suppose the trustee, as Maria Silvey's successor, became the sole payee and mortgagee of the buyer. His recovery might be even greater if the buyer defaulted. The equity for Maria Silvey and the bankruptcy estate would be the difference between the property's value and the secured debt to AmSouth. The Silveys' payments and the buyer's payments would have substantially reduced the $250,000 secured debt to AmSouth. If the property was still worth the $290,000 sale price, the equity at the time of a default by the seller should be substantially more than $40,000. If the trustee could foreclose and buy the property by making a credit bid at foreclosure, then he could argue for a sale of the property free and clear of AmSouth's mortgage. 11 U.S.C. § 363(f). Darrel Silvey and AmSouth might disrupt this plan, or they might cooperate in accomplishing the same result. The trustee and the property would remain liable to Darrel Silvey for any unreimbursed payments to AmSouth while the trustee pursued foreclosure and sale. These payments could make a large total over a long delay, but the equity for the bankruptcy estate should be substantial if the trustee were to carry out his plan within a reasonable time.

The trustee has problems with convincing the court that this prospect justifies his preferred remedy. It involves much speculation. Note the large number of "ifs" and also a few "mights" in the preceding paragraph. The trial also did not include evidence of the property's value at the time of the trial. The $290,000 sale price was probably a high price at the time of the sale about three years before the trial.

---

[3] The court's opinion suggested that § 550(e) applies only if there was an exchange between the debtor and the transferee, but including Darrel as a payee and mortgagee was part of an exchange.

The value of the property may have increased or decreased before the trial. The buyer had problems with payments before the trial, but there was no evidence at the trial that a default could be expected. Putting the trustee in the place of Maria Silvey as sole payee and mortgagee could also be unfair to the buyer since the trustee would have a good reason to pull the trigger quickly on foreclosure. The court's calculation of damages may have produced too small an amount, but the trustee's motion to alter or amend the judgment does not address that question or even ask for pre-judgment interest. Nevertheless, the decision to award damages was justified as an alternative to attempting to unravel Maria's and Darrel's transactions with the property.

        The court will enter an order denying the trustee's motion but correcting the judgment to remove from the bankruptcy estate Maria Silvey's interest in the note and mortgage from the buyer.

# # #